UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL A. JOYCE,

                Petitioner,

    v.

MR. MARTUSCELLO,
Superintendent

                Respondent.

11 Civ. 5265 (LBS)

**MEMORANDUM & ORDER**

SAND, J.

*Pro se* petitioner Michael Joyce petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that he is being held in state custody in violation of his federal constitutional rights. Joyce was convicted, after a guilty plea, of criminal possession of a weapon in the second degree and sentenced to seven years in jail and five years of post-release supervision. *See People v. Joyce*, 872 N.Y.S.2d 8, 9 (App. Div. 2009); Resp't's Decl. Opp. Pet. Writ Habeas Corpus ("Resp't's Decl.") ¶ 1. In his petition, Joyce alleges that police did not have probable cause to stop and frisk him and the court should have suppressed the gun that the police found on him. In his memorandum supporting his petition, Joyce adds an assortment of claims, including ineffective assistance of trial and appellate counsel. Because Joyce had an opportunity to fully and fairly litigate his Fourth Amendment claims and because his ineffective assistance of counsel claims are procedurally barred or fail on the merits, we deny Joyce's petition.

    I.       **Background**[1]

---

[1] The facts described below are not contested and come from Joyce's appellate brief, Resp't's Decl. Ex. A, at 2–5, and the State's appellate brief, *id.* Ex. B, at 3–5, unless otherwise stated.

1

On December 14, 2006, at around 12:40 a.m., Joyce was walking along the street. Officer Damien Banks and his partner pulled up near Joyce and Banks asked Joyce to come closer.

Banks had just received a broadcast reporting a gunpoint robbery ten minutes earlier and a couple of blocks away. The robbery suspect was "described as a black man, with a mustache, who was wearing a 'black hooded sweater' and who was approximately 5'6" and 140 pounds." *Id.* Ex B, at 3 (citing Banks's testimony). Joyce is 5'11" and 210 pounds.

Banks's argument for stopping Joyce despite this sizeable difference is that Joyce was wearing a dark hood, "no one around . . . matched the broadcast description," the lighting was poor, and that he only saw Joyce from behind. *Id.* at 3–4.

Joyce walked to Banks with his left arm close to his side and his right arm swinging freely. Banks felt that Joyce's gait indicated that Joyce had a concealed gun. Banks then asked Joyce to place his hands on the police car. Joyce did so. Banks thought Joyce's position—with his right arm further out than his left—was awkward so he moved Joyce's left hand and then quickly frisked Joyce's waist. Banks found a loaded gun and arrested Joyce. At a showup, the robbery victim did not identify Joyce as the robber.

Joyce was tried for criminal possession of a gun. The suppression hearing started with a colloquy about the material that would be turned over to defense under *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961). Hr'g Tr. 2–6, Sept. 7, 2007. Under *Rosario*, the prosecution is "obligated to give to the defendant, for use during cross-examination, any nonconfidential written or recorded statements of a prosecution witness that relate to the subject matter of the witness' testimony." *People v. Banch*, 608 N.E.2d 1069, 1071 (N.Y. 1992); *see also* N.Y. Crim. Proc. § 240.45 (codifying *Rosario*).

After the prosecution explained that they had turned over all *Rosario* material, Joyce's trial counsel moved for the "previous stop and frisk reports of this officer" under *Rosario* to allow her to cross-examine Banks better on Banks's claim that his experience as a police officer gave him reason to believe Joyce's gait meant that Joyce had a gun. Hr'g Tr. 3–6. The judge denied the motion, telling trial counsel to "[f]lush that out during your cross examination." *Id.* at 4.

Trial counsel demurred, arguing that she should receive *Rosario* material before cross-examination. She explained that she could not "make th[e] tactical strategic decision," *id.* at 5, to ask Banks about his experience because her alternative argument, which she later made, was that the prosecution did not put forward enough evidence to prove Banks' expertise at interpreting body language, *see id.* at 120–21 (making that argument). The judge replied argued that Banks might not even testify about his previous arrests. *Id.* at 5–6.

On direct, Banks discussed his experience, saying that Joyce's gait "drew my attention, due to the fact that in my previous experience with other gun arrests, that individual that does that, they have . . . a firearm on them." *Id.* at 21–22.

On cross, trial counsel renewed her *Rosario* application. *Id.* at 53. The trial judge denied it. *Id.* Trial counsel replied, "I renew it with renewed force," and again argued that she needed to have the "prior stop and frisk reports" before she could cross-examine Banks. *Id.* at 54. The trial judge denied it again. *Id.*

At the conclusion of the hearing, the judge held that the gun would not be suppressed. *Id.* at 148. First, the judge held that the description of the robber and Joyce's proximity in time and space to the robbery meant that Joyce "partially fit some of the indications" and gave the officers "certainly articulable facts" to ask Joyce to come over. *Id.* at 147. The judge then found that the

3

officers were justified to frisk Joyce because "viewing the totality of the circumstances . . . , the defendant made some furtive movements," such as "keeping his left arm tightly against his body," giving "the officers justification for their own safety . . . to do the limited frisk of the defendant." *Id.* at 147–48.

After the judge's suppression ruling, Joyce pled guilty.

Joyce appealed with different counsel, who only pursued whether the issue as to whether the gun should have been suppressed on Fourth Amendment and N.Y. Const., Art. I, § 12, grounds. *See* Resp't's Decl. Ex. A. Joyce tried to file an additional *pro se* brief, allegedly arguing, among other things, that trial counsel was constitutionally ineffective. *Id.* Ex. N, at 7.

The Appellate Division unanimously affirmed the conviction and rejected Joyce's motion seeking leave to file a *pro se* brief. *People v. Joyce*, 872 N.Y.S.2d 8 (App. Div. 2009). The Court of Appeals denied leave to appeal. *People v. Joyce*, 908 N.E.2d 933 (N.Y. 2009).

Joyce then filed a motion to vacate judgment pursuant to N.Y. Crim. Proc. § 440.10, arguing that his Fourth Amendment rights had been violated and that Banks had committed perjury. *See* Resp't's Decl. Ex. G. The trial judge denied Joyce's motion "[b]ecause the grounds raised here either were determined on the merits on direct appeal, or could have been raised on direct appeal . . . ." *Id.* Ex I, at 2. Joyce sought leave to appeal that denial, *id.* Ex. J., and a justice of the Appellate Division denied Joyce leave. *Id.* Ex. L.

Joyce then made an application to the Appellate Division for a writ of *coram nobis*, asserting that he "was denied a full and fair hearing" and was denied his "right to the effective assistance of counsel on direct appeal." *Id.* Ex. M, at 4. The former was premised on the failure of the trial court to recognize trial counsel's *Rosario* request, *id.* at 17–18, and the latter was premised on appellate counsel's decision not to raise the *Rosario* request on direct appeal, *id.* at

4

18–22. The Appellate Division denied Joyce's application without explaining its reasoning. *Id.* Ex. O.

On June 18, 2011, Joyce filed the habeas petition that is the subject of this action. In Joyce's habeas petition, the "grounds raised" in his application for a writ of *coram nobis* as follows:

> The trial Judge abused his discretion and denying a full and fair hearing to due process of law preserving prosecution misconduct and I am withdrawing ineffective assistance of appellate counsel from argument[.]

Pet. Under 28 USC § 2254, at 2. Describing his application for leave to appeal to the Court of Appeals on direct appeal, Joyce wrote:

> My arrest violated the Fourth amendment; and the weapon should of had been suppressed, and ineffective of appellate counsel. And I will like to preserve the issue of prosecutorial misconduct[.]

*Id.* at 3.[2] Finally, Joyce responded to Prompt 13, which says in bold and small caps, "State every ground on which you claim that you are being held unlawfully," and notes that if a petitioner wants to raise the same grounds as on direct appeal he or she "should attach a copy of [his or her] state court appellate brief or its table of contents." *Id.* at 4.

In Prompt 13, Joyce wrote two numbered paragraphs. The first attacks the suppression hearing because the officers lacked probable cause to arrest him or seize his gun. *Id.* The second numbered paragraph claims there was "[p]rosecutorial misconduct" because the state could not make a "prima facie case . . . based on description of the robber by the victims in a radio transmission." *Id.* This second numbered claim is wrong, because Joyce was charged with

---

[2] Contrary to Joyce's assertion that ineffective assistance of appellate counsel was raised in the application for leave to appeal to the Court of Appeals, his appellate counsel only asked the court to "consider and review the issue outlined" in the brief to the Appellate Division: the Fourth Amendment issue. Resp't's Decl. Ex. D.

5

possession of a gun that he possessed at the time of his arrest. Joyce also attached the table of contents of his appellate brief, which had only raised the Fourth Amendment issues. *See id.* at 7.

Following our order to answer, the State sent a memorandum of law on March 8, 2012, that only addressed the Fourth Amendment issues. *See* Resp't's Mem. Law Opp. Pet. Given that, in his petition, Joyce wrote in present tense that he was "withdrawing ineffective assistance of appellate counsel from argument" and he did not list ineffective assistance of counsel as one of his grounds for relief nor did he incorporate it through his brief, the State of New York was not on notice that Joyce wanted his ineffective assistance of counsel claim considered. *See id.* at 12 (calling Joyce's Fourth Amendment claim his "sole" claim).

Joyce then asked for—and we granted—an extension so that he could file a responsive brief. *See* Order, Apr. 4, 2012, ECF No. 16 (referring to Joyce's pending submission as "a response"). We received Joyce's brief on May 9, 2012. It raises several claims for the first time, although some are duplicative.

Courts in the Second Circuit construe *pro se* petitioners' papers to "raise the strongest arguments that they suggest." *Mitchell v. Lara*, No. 11 Civ. 1540, 2011 WL 5075117, at *5 (S.D.N.Y. Oct. 25, 2011) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). The rules governing 22 U.S.C. § 2254 petitions require that all grounds for relief be included on the petition form, *see* Rule 2(c) of the Rules Governing Section 2254 Petitions, 28 U.S.C. foll. § 2254, but this District reviews habeas claims raised after the petition is filed, even if they were first raised in a reply brief. *See Bright v. Clark*, No. 10 Civ. 7686, 2011 WL 4406348, at *2–3 (S.D.N.Y. Sept. 21, 2011) (concluding that "it would not be appropriate to dismiss the Petition solely on the procedural grounds raised," including that petitioner did not make his arguments in a separate memorandum, but rather in a reply brief); *cf. DiSimone v. Phillips*, 461 F.3d 181, 184–

6

85, 188–89 (2d Cir. 2006) (approving a district court's stay of a federal habeas case to resolve a state law issue raised for the first time in a reply memorandum following a habeas petition).

Accordingly, Joyce's memorandum makes three claims that we must discuss: (1) the Fourth Amendment search and seizure violations also included in Joyce's petition, Decl. Michael A. Joyce Supp. Pet. ("Joyce Memo.") 13–15, 17–19, 25–33; (2) "[t]rial counsel was ineffective," *id.* at 8–13; and (3) "appellate counsel was ineffective," *id.* at 19–23. Both ineffective assistance of counsel claims were premised on counsels' failure to raise the *Rosario* issue after it was first denied. Any other allegations that could be construed from Joyce's brief would fail to state a habeas claim.

When reviewing a habeas claim, we cannot grant habeas relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Additionally, state prisoner habeas claims must be exhausted—that is, "[t]he federal claim must be fairly presented to the state courts," *Ortiz v. Ercole*, No. 08 Civ. 9723, 2012 WL 1448445, at *2 (S.D.N.Y. Apr. 18, 2012) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971))—and cannot be procedurally barred. A habeas claim can become procedurally barred because "federal courts may not review the judgment of a state court that 'rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the court's decision.'" *Jimenez v. Walker*, 458 F.3d 130, 136 (2d Cir. 2006) (quoting *Harris v. Reed*, 489 U.S. 255, 260 (1989)). The Fourth Amendment issue is exhausted and properly before the court,

as the State conceded. *See* Resp't's Mem. Law Opp. Pet. 12. We analyze whether the ineffective assistance arguments are exhausted or barred below.

We find that Joyce raised no Fourth Amendment issue upon which we can grant habeas relief under the controlling case, *Stone v. Powell*, 428 U.S. 465 (1976). We then find that Joyce's trial counsel claim is procedurally barred and his appellate counsel claim fails on the merits because we cannot find state court unreasonably applied ineffective assistance of counsel law. It is not unreasonable to find that the Fourth Amendment claim appellate counsel raised on appeal was not clearly and significantly weaker than the *Rosario* claim.

## II. Discussion

### A. *Joyce Presents No Fourth Amendment Habeas Claim Under* Stone v. Powell

Joyce argues that the gun should have been suppressed because the police searched him or seized him or the weapon in violation of his Fourth Amendment rights. On habeas review, Fourth Amendment arguments face a very high hurdle. Under *Stone*, a state prisoner cannot get habeas relief because evidence should have been suppressed "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." *Stone*, 428 U.S. at 494.

The Second Circuit finds that opportunity for full and fair litigation is absent "only if the state has provided 'no corrective procedures at all' or if the defendant was prevented from using a corrective procedure because of an 'unconscionable breakdown in the underlying process.'" *Velez v. Ercole*, No. 06 Civ. 334, 2006 WL 2742046, at *2 (S.D.N.Y. Sept. 26, 2006) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)). Joyce makes no allegation that there was an unconscionable breakdown or that there were no corrective procedures. Because Joyce had an opportunity to fully and fairly litigate his Fourth Amendment claims, as defined in *Capellan*, we deny his Fourth Amendment claims.

8

B. *Joyce's Ineffective Assistance of Counsel Claims Fail Because They Are Procedurally Barred or Fail on the Merits*

Joyce claimed that both his trial counsel and appellate counsel were ineffective for failing to raise the *Rosario* argument after Banks discussed his experience on direct examination. We now explain why Joyce's ineffective assistance of trial counsel claim is procedurally barred and why his ineffective assistance of appellate counsel fails on the merits.

### 1. Ineffectiveness of Trial Counsel Is Procedurally Barred

Joyce's argument that his trial counsel was constitutionally ineffective is exhausted and procedurally barred. Joyce's appellate counsel did not raise Joyce's ineffectiveness of trial counsel argument on his direct appeal to the Appellate Division, nor did he raise it when asking the Court of Appeals for review. *See* Resp't's Decl. Ex. A; Ex. D. Under New York state law, claims of ineffective trial counsel that are not raised on direct appeal are procedurally defaulted. *See Harrison v. Smith*, No. 05 Civ. 5953, 2012 WL 3822211, at *3 (S.D.N.Y. Sept. 4, 2012). Such claims are deemed exhausted: "For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quoting *Harris*, 489 U.S. at 263 n.9)). Therefore, claims of ineffective assistance of counsel not raised on direct review are considered exhausted.

Additionally, "because of the procedural default," the claim is procedurally barred unless petitioner "can show 'cause' for the default and actual 'prejudice' resulting therefrom, or show that he is 'actually innocent.'" *Brown v. Senkowski*, 152 F. App'x 15, 19 (2d Cir. 2005) (citations omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)). That petitioner asked his appellate counsel to raise the ineffective assistance argument or that he "attempted to

9

submit a supplemental brief pro se" are not a showing of cause. *Harrison*, 2012 WL 3822211, at *4–5. Joyce also cannot show prejudice because he did not show he was actually innocent.

Because Joyce's ineffective assistance of trial counsel claim is procedurally barred, we need not dismiss its merits and we must dismiss it.

### 2. Ineffectiveness of Appellate Counsel Claims Are Procedurally Barred or Fail on the Merits

Joyce's ineffectiveness of appellate counsel claim is exhausted but not procedurally barred. Unlike the ineffective assistance of trial counsel claim that Joyce failed to raise, as required, on direct review, Joyce raised the ineffective assistance of appellate counsel argument on application for a writ of *coram nobis*. Resp't's Decl.Ex. M ¶ 24 (raising ineffective assistance of appellate counsel in *coram nobis* application); *see Sweet v. Bennett*, 353 F.3d 135, 141 n.7 (2d Cir. 2003) ("In New York, coram nobis is the appropriate remedy for ineffective assistance of appellate counsel."). The Supreme Court has also required that petitioners give state courts "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim," *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard*, 404 U.S. at 276–77), such as by citing to relevant caselaw. Joyce did not cite to any relevant opinions nor did he cite the Sixth Amendment, but Joyce fairly presented his case by describing an "allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Alicea v. Smith*, No. 09 Civ. 2074, 2012 WL 3156464, at *4 (S.D.N.Y. July 31, 2012) (quoting *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)). The ineffectiveness of appellate counsel claim is therefore exhausted but not procedurally barred. *Cf. id.* at *7 (explaining that the "because [petitioner] raised [the issue] in his *coram nobis* application and cited state case law employing relevant constitutional analysis . . . , this Court analyzes the merits of petitioner's claim").

10

An additional result of the *coram nobis* application is that we must grant statutory deference to the Appellate Division's denial and can only grant relief if we find its decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Harrison*, 2012 WL 3822211, at *5 (describing statutory deference). The Appellate Division's denial of Joyce's application for a writ of *coram nobis* does not give reasoning to which we can defer explicitly, but the Second Circuit has concluded that any decision that does not contain "a clear and express statement of reliance on a state procedural bar" must be given statutory deference, *Jimenez*, 458 F.3d at 145, even decisions that do not give any reasoning, *see Sellan v. Kuhlman*, 261 F.3d 303 (2d Cir. 2001) (applying statutory deference to a denial of writ of *coram nobis* for an ineffective assistance of appellate counsel claim that contained no reasoning); *see also Jimenez*, 458 F.3d at 143, 145–46 (approving *Sellan*).

Therefore, we consider whether the Appellate Division made an unreasonable application of the governing Supreme Court standard, *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Court established the governing two-part test to find whether counsel has been constitutionally ineffective. First, petitioner "must show that counsel's performance was deficient" and then petitioner "must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The Second Circuit has held that a petitioner can only show that an appellate counsel is deficient for failing to raise a claim on appeal "if [petitioner] shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Ramchair v. Conway,* 601 F.3d 66, 73 (2d Cir. 2010) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

11

Using that standard, the Second Circuit has twice granted petitioners' claims of ineffective assistance of counsel when appellate counsel failed to raise a *Rosario* claim. *Flores v. Demske*, 215 F.3d 293 (2d Cir. 2000); *Mayo*, 13 F.3d at 528. However, both cases are distinguishable for three reasons. First, in *Mayo* and *Flores*, petitioners had very strong *Rosario* claims based on memo books, which were obviously *Rosario* material. Second, at the time *Mayo* and *Flores* were heard, statutory deference did not apply yet. Third, at that same time, *Rosario* violations were stronger appellate arguments because they required new trials without a showing of prejudice.

First, *Mayo* and *Flores* were noncontroversial applications of *Rosario* and were both recognized as strong claims at the trial level. In *Flores*, trial counsel waived a *Rosario* issue even though "the trial court even warned the prosecutor that the failure to turn over the memo books could result in 'setting aside the verdict if need be.'" *Flores*, 215 F.3d at 304. In *Mayo*, "[t]he trial court called the prosecutor's failure to turn over the memo books 'inexcusable' and 'shocking . . . .'" *Mayo*, 13 F.3d at 531. An expert testifying on behalf of the petitioner explained that "the memo books had 'obliterated' the defense and 'embarrassed' defense counsel . . . ." *Id.* at 532. The *Rosario* claim in *Mayo* was so strong that, after Mayo's direct appeal failed, the New York Court of Appeals had used it to reverse the conviction of Mayo's codefendant, a fact that the magistrate judge considered when determining if the failure to raise the *Rosario* claim was ineffective. *See id.*

The biggest difference between Joyce's case and *Flores* and *Mayo* is that neither *Flores* nor *Mayo* were reviewed under the statutory deference that is now required. *Mayo* was decided before the statute requiring deference was effective and the statute was not applied retroactively in *Flores*. *See Flores*, 215 F.3d at 298 n.1 (noting the statute's effective date and that it did not

apply retroactively to *Flores*). That meant that *Mayo* and *Flores* did not have to find that state courts were unreasonably applying ineffective assistance of counsel law, as we must here.

Finally, when *Flores* and *Mayo* were decided, *Rosario* violations in which the State refused to turn over *Rosario* material were considered *per se* prejudicial and automatically resulted in a new trial. *See Flores*, 215 F.3d at 304 ("[D]enial of the motion would have constituted *per se* reversible error on direct appeal. The only basis for this waiver was counsel's misunderstanding of *Rosario* and the failure to realize that harmless error did not apply."); *Mayo*, 13 F.3d at 530, 534–37 (emphasizing that *Rosario* violations resulted in *per se* reversible error and rejecting the State's argument that this was in doubt).

Multiple courts have understood that *Flores* and *Mayo* were based on the *per se* new trial rule. *See Sellan*, 261 F.3d at 310 (asserting in an explanatory parenthetical that *Mayo* held "that petitioner was denied effective assistance of counsel when appellate counsel failed to raise a *Rosario* claim that would require *per se* reversal under prevailing New York case law"); *Anderson v. Keane*, 283 F. Supp. 2d 936, 941 (S.D.N.Y. 2003) ("[The Second Circuit] reached these results . . . because violation of the *Rosario* rule automatically results in reversal."); *Nelson v. Brown*, 673 F. Supp. 2d 85, 91 (E.D.N.Y. 2009) ("[T]he Second Circuit has repeatedly held that an attorney's waiver of a valid *Rosario* claim is 'objectively unreasonable.' This is because, under New York law, obtaining some kind of relief for a *Rosario* violation is automatic." (citations omitted)).

However, since *Flores*, New York adopted a statute that requires harmless error analysis on *Rosario* claims. Now failure to turn over *Rosario* material "shall not constitute grounds for any court to order a new pre-trial hearing or set aside a conviction, or reverse, modify or vacate a judgment of conviction in the absence of a showing by the defendant that there is a reasonable

13

possibility that the non-disclosure materially contributed to the result of the trial or other proceeding." N.Y. Crim. Proc. § 240.75.

Now that § 240.75 has been enacted, *Rosario* arguments are less likely to result in tangible gains to a defendant on appellate review. As a result, ineffective assistance of appellate counsel arguments premised on *Rosario* claims are less likely to succeed as well—whether this is conceptualized as appellate counsel not being deficient for choosing to raise a stronger argument or restoring the difficult-to-overcome prejudice prong.

Section 240.75's weakening of the *Rosario* claim means that we cannot find that it was unreasonable to hold that the Fourth Amendment argument was not "clearly and significantly weaker" because of its relative strength. In *Mayo*, for instance, "appellate counsel chose to argue issues that were particularly weak and had little or no chance of success." *Mayo*, 13 F.3d at 536. In Joyce's case, although appellate counsel could have argued the issue better, the Fourth Amendment argument was strong. Joyce did not match the description given over the radio. Appellate counsel cited to controlling precedent, which held that "the defendant's . . . walking with arm stiffly against his body during the second encounter, the high-crime nature of the area and his inconsistent and evasive responses during the police questioning . . . may not generate a founded suspicion of criminality." *People v. Powell*, 667 N.Y.S.2d 725, 727 (App. Div.), *appeal granted*, 698 N.E.2d 972 (N.Y.), *and appeal dismissed*, 700 N.E.2d 1220 (N.Y.); *see* Resp't's Decl. Ex. A, at 14–15 (citing to *Powell*). Additionally, victory on the Fourth Amendment issue would have resulted in a new trial—if not acquittal—because the unsuppressed gun was the evidence that convicted Joyce.

By contrast, to win on the *Rosario* argument in this case, appellate counsel would have been required to make the argument that all of a testifying officer's stop-and-frisk records were

14

*Rosario* material[3] and to prove that the nondisclosure materially contributed to the guilty verdict. There are two points at which a material contribution argument could fail. First, Banks's stop-and-frisk records may not have contradicted Banks's testimony. Second, a judge may have found reasonable suspicion based on the objective description of Joyce's behavior and appearance near the scene of a gunpoint robbery, regardless of Banks's subjective state of mind.

Indeed, it is not clear that either the trial judge or the Appellate Division actually relied on Banks' prior experience, in which case cross-examining Banks regarding his experience would not have affected the verdict. The trial judge did not invoke Banks's experience when holding that "under the totality of the circumstances" the officers "were justified" in frisking the defendant. Hr'g Tr. At 147–48. Instead, the evidence that the trial judge mentioned when explaining his decision was the defendant's "furtive movements" and "that [officers] were investigating a gunpoint robbery." *Id.* Similarly, the Appellate Division mentioned Banks's experience, but concluded "that defendant's behavior, coupled with the circumstances suggesting his possible involvement in the robbery, provided reasonable suspicion to justify a frisk." *Joyce*, 872 N.Y.S.2d at 9.

We are not asserting that Joyce's *Rosario* argument would have failed. Instead our conclusion is that its uncertainty does not let us say it would be unreasonable to find the Fourth Amendment argument stronger. Counsel must have "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Ramchair*, 601 F.3d at 73

---

[3] Stop-and-frisk reports of persons other than the defendant can be *Rosario* material, but we are aware of no case that holds that such reports are *Rosario* material when an officer testifies to his or her experience generally. The First Department, where Joyce's appeal was brought, previously declined to review an unpreserved claim that a stop-and-frisk report of another person was *Rosario* material. *See People v. Bell*, 683 N.Y.S.2d 422 (App. Div. 1998); *see also Bell v. Albaugh*, No. 00 Civ. 1582, 2000 WL 1877103 (S.D.N.Y. 2000) (describing *Bell*'s history). In so doing, it noted that "the *Rosario* nature of this report was not established until the arresting officer testified at trial," *Bell*, 683 N.Y.S.2d at 422, indicating that an officer's testimony can make such reports *Rosario* material. The report at issue was a report of a frisk of another man that took place while petitioner was himself being frisked and handcuffed. *Albaugh*, 2000 WL 1877103, at *1.

15

(quoting *Mayo*, 13 F.3d at 533). We find that Joyce's Fourth Amendment was relatively strong and Joyce's appellate counsel reasonably could have thought the *Rosario* argument was unlikely to obtain a reversal because it was novel and possibly not prejudicial. Therefore, it was not an unreasonable application of clearly established federal law to find appellate counsel was not constitutionally ineffective.

### III.  Conclusion

We find any other claims Joyce could be construed to have made are without merit. For the foregoing reasons, the petition is **DENIED**. As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253.

SO ORDERED.

Dated: September 20, 2012
New York, NY

_____
U.S.D.J.